UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERESA L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:22 CV 56 JMB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On April 10, 2020, Plaintiff Teresa L. filed an application for supplemental security income, Title XVI, 42 U.S.C. §§ 1381, *et* seq., and disability insurance benefits (Tr. 221-233). In her application, she alleged that she became disabled on August 17, 2019 because of COPD, Emphysema, and knee issues (Tr. 271). After Plaintiff's applications were denied on initial consideration (Tr. 79-89), and reconsideration (Tr. 103-120), she requested a hearing from an Administrative Law Judge (ALJ) (Tr. 162-163).

Plaintiff and counsel appeared for a hearing on June 10, 2021 (Tr. 52-78). Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert Jenifer Larue. The ALJ issued a decision denying Plaintiff's application on November 24, 2020 (Tr. 24-43). The Appeals Council denied Plaintiff's

request for review on June 29, 2022 (Tr. 1-4). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II. Evidence Before the ALJ

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born in August, 1979 and was almost 40 years old on the alleged onset date. (Tr. 58). On the date of the hearing, she was not married and was living with her father, his fiancé, and her daughter who was 12 (Tr. 59). She graduated from high school (Tr. 60). Plaintiff had earnings that range from approximately $1000 to $20,000 a year in the 15 years prior to her onset date (Tr. 240, 247).

In her May, 2020 Function Report, Plaintiff states that her conditions cause difficulty "running around," climbing stairs, and sitting and typing (Tr. 305-311). In a typical day, she wakes, gets dressed, does some household chores, fix meals, uses her phone, takes a shower, and then goes to bed (Tr. 306). She has trouble getting comfortable and breathing while sleeping (Tr. 306). She completes some housework, helps her father and his fiancé cook meals, and vacuums with breaks; she also drives a car, does shopping (but uses a motorized cart sometimes), walks and exercises, watches TV, and uses social media (Tr. 309). However, she cannot walk for more than 10 or 15 minutes (Tr. 310).

Plaintiff testified at the June 2021 hearing that herniated and bulging discs in her back, bad knees, migraines, shoulder issues, depression and anxiety, issues with her lungs, COPD, emphysema, and asthma prevent her from doing daily tasks (Tr. 63). Her physical conditions cause pain upon movement, limit standing to no more than 15 minutes, prevent walking more than half a mile, and prevent lifting more than 10 pounds (Tr. 64-65). She also gets winded quickly, has trouble breathing in hot and humid weather, and suffers from migraine headaches caused by

stress (Tr. 65-66). She takes a number of medications, including Ozempic, Atorvastatin, Bumex, Buspar, Diclofenac, Doxepin, Levothyroxine, Singulair Omeprazole, Ellipta, Enprelogy, and Zoloft, in addition to Tylenol and Botox, and other medications (Tr. 66-67). They do not cause side effects (Tr. 67). During a typical day she cooks, does dishes, feeds animals (cats) but has difficulty sleeping (Tr. 67). She also cleans (but vacuuming hurts her back), does laundry, and dusting, both while seated (Tr. 68). Plaintiff has been losing weight upon the recommendation of her doctors for pain management; however, it has not helped with the pain in her lower back and knee (Tr. 68-69). She also is taking steroid injections for her back (Tr. 69). She testified that she has back pain 3 to 4 times a week and that she needs to lay down after 45 minutes of alternating between sitting and standing (Tr. 71).

Vocational expert Jenifer Larue was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and past relevant work experience who has the following limitations: lift up to 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours and sit for 6 hours in a normal 8-hour workday with normal breaks; occasionally climb ramps or stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally reach overhead on the right; avoid concentrated exposure to cold, extreme heat, wetness, humidity, and chemicals, fumes, odors, dusts, gases, and poorly ventilated areas; avoid concentrated exposure to operation control of moving machinery; and avoid unprotected heights and hazardous machinery (Tr. 75). Ms. Larue testified that at this light exertional level, the individual could perform past relevant work of assistant manager and front desk clerk (Tr. 76). However, if additional limitation were imposed (could lift 10 pounds occasionally, stand for 2 hours and sit for 6 hours in a normal 8-hour workday with normal breaks), the person could not perform past relevant work (Tr. 76). Nonetheless, with these additional

limitations, the person would be able to perform other work in the national economy, namely sedentary and unskilled work like order clerk, account clerk, and addresser (Tr. 76).

If more limitations were added, a low stress job with only occasional changes in the work setting, no fast-paced type work, and simple and routine tasks, the same types of jobs would be available (Tr. 77). Ms. Larue further testified that employers would only tolerate a 15% off task employee who is absent no more than once per month (Tr. 77).

### B. **Medical and Opinion Evidence**

Plaintiff's arguments focus on her mental limitations, major depressive disorder and anxiety, and the relationship to her residual functional capacity and briefly touches upon the necessity of new medical opinions to analyze her physical condition. Accordingly, the Court will focus on the medical evidence related to her mental condition and will discuss her relevant physical condition below.

Plaintiff was treated by Dr. Binu Chakkamparambil from January to May, 2021. At the initial encounter, on January 14, 2021, Plaintiff reported depression and anxiety which started two years prior because of abuse suffered by her daughter at the hands of her ex-husband (Tr. 934). She also reported anxiety that worsened over the past year (Tr. 935). Prior to seeing Dr. Chakkamparambil, she was only seeing a therapist and she had gone through a number of medications that didn't seem to work (Tr. 935). Dr. Chakkamparambil found Plaintiff to be cooperative, have fair eye contact and judgment, intact language and memory, intact concentration with goal directed and linear thought, a "fair understanding of her psychiatric problems and the medications," and average intellect (Tr. 939). She also had a "not good" mood and a restricted affect (Tr. 939). Plaintiff nonetheless reported to Dr. Chakkamparambil that nearly every day she has little interest in things, is depressed and feeling down, has trouble with sleep, poor appetite,

and has trouble concentrating (Tr. 939).  Dr. Chakkamparambil diagnosed her with severe episode of recurrent major depressive disorder without psychotic features and generalized anxiety disorder (Tr. 940).  She was directed to continue Doxepin, to reduce and eliminate Wellbutrin, and to start Buspar; she also was directed to see a therapist and return in four weeks (Tr. 941).

A follow up on February 11, 2021 revealed the same findings – although the appointment was moved up because of a sudden death in the family that worsened her depression (Tr. 918).  Dr. Chakkamparambil suggested an increase in Buspar, again reiterated the value of therapy, and encouraged Plaintiff to live a healthier lifestyle (Tr. 919).  The same findings and suggestions occurred on March 12, 2021, except that Plaintiff's Buspar dosage was increased (Tr. 883).  There was no change at the next follow-up on April 9, 2021 in terms of Plaintiff's reports, diagnosis, prognosis, and treatment plan (Tr. 853).  In the last record on May 6, 2021, Dr. Chakkamparambil suggested that Plaintiff taper off Buspar and prescribed Viibryd (along with a continuation of Doxepin) (Tr. 822).

Thus, Plaintiff's brief treatment for mental health issues show a continued effort to find medication to help treat her symptoms and encouragement in restarting therapy.  It is unclear from the record why Plaintiff did not continue with the therapist she was seeing prior to Dr. Chakkamparambil or why she failed to acquire a new therapist.

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, a claimant must prove that he is disabled under the Act.  See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the

national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d

549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. (Tr. 27-43). The ALJ first noted that Plaintiff met the insured status requirements through December 31, 2024 and that she must establish that she was disabled on or prior to that date (Tr. 29). The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2019, prior to the application date (Tr. 13). At step two, the ALJ found that Plaintiff had the severe impairments of obesity, degenerative disc disease of the lumbar and thoracic spine, degenerative joint disease of the right knee, major depressive disorder, generalized anxiety disorder, COPD/Emphysema, chronic pain syndrome, and "residuals from right shoulder arthroscopy" (Tr. 29-30). The ALJ further found that the conditions of hypertension, gastroesophageal reflux disease, acquired hypothyroidism, hyperlipidemia, obstructive sleep apnea, and migraine headaches are non-severe (Tr. 30). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ specifically addressed listings 1.15, 1.17, 1.18, 3.02, 12.04, 12.06 (Tr. 31-33).

The ALJ next determined that Plaintiff had the RFC to perform sedentary work with limitations including: lifting up to 10 pounds occasionally; stand/walk for 2 hours and sit for 6

hours in an 8 hour work day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with her right arm; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and chemicals, fumes, odors, dust, gases and poorly ventilated areas; avoid concentrated exposure to operational control of moving machinery; avoid unprotected heights and exposure to hazardous machinery; work in a low stress job that only has occasional changes in work settings; and, not work in a fast paced job (Tr. 33-34). In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff; assessments; and Plaintiff's testimony regarding her abilities, conditions, and activities of daily living (Tr. 34-40).

At step four, the ALJ concluded that Plaintiff could perform no past relevant work; that her age on the alleged onset date placed her in the "younger individual" category; and that she has a high school education (Tr. 41). The transferability of job skills was not an issue because Plaintiff is not disabled (Tr. 41). The ALJ found at step five that someone with Plaintiff's age, education, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely order clerk, charge account clerk, and addresser (Tr. 42). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from August 19, 2019 to July 20, 2021 — the date of the decision. (Tr. 42-43).

## V. Discussion

Plaintiff argues that the ALJ failed to acquire a medical opinion that would support his findings as to Plaintiff's mental and physical RFC. She asserts that there is no medical opinion supporting the conclusion that she has only moderate limitations in the ability concentrate, persist, maintain pace, and adapt or manage herself (Doc. 17, p. 4). She next argues that the ALJ failed to acquire expert medical opinions after the records (as to her physical condition) was updated.

Finally, Plaintiff argues that the ALJ did not support his credibility determination. Defendant counters that the ALJ is not required to source a medical opinion and that substantial evidence supports the RFC finding. As an initial matter, Defendant is correct that an ALJ is not required to use a medical opinion to support an RFC. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). However, his assessment of Plaintiff's RFC must be supported by substantial evidence.

A claimant's RFC is the most an individual can do despite the combined effects of her credible limitations. See 20 C.F.R. § 404.1545. "The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'" Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (S.S.A. 1996)). An ALJ's RFC finding is based on all of the record evidence, the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Wildman, 596 F.3d at 969; see also 20 C.F.R. § 404.1545; SSR 96-8p (listing factors to be considered when assessing a claimant's RFC, including medical source statements, recorded observations, and "effects of symptoms … that are reasonably attributed to a medically determinable impairment"). The ALJ must explain his assessment of the RFC with specific references to the record. SSR 96-8 (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" in describing how the evidence supports each conclusion). Disability is not determined by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity. 20 C.F.R. §§ 404.1545(e), 416.945(e).

"It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall, 274 F.3d at 1217; see also Hensley, 829 F.3d 926, 932 (8th Cir. 2016). Because a claimant's RFC is a medical question, an ALJ's assessment of it must be

supported by substantial medical evidence that the claimant could perform the requirements of competitive work without having her condition result in impermissible levels of off-task behavior such as lying down and absenteeism.  See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Here, the ALJ found that Plaintiff could perform sedentary work with various limitations.

In addressing Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ stated that Plaintiff has moderate limitations based on her function report, her mental status examinations, neurological examinations, and her activities of daily living (Tr. 32).  To support this conclusion, the ALJ noted that, in her function report, Plaintiff stated that she does not have problems following instructions or completing tasks she has started (Tr. 310).  He further noted that mental status examinations reveal "intact attention/concentration as evidenced by her ability to hold a conversation; goal directed and linear thoughts; intact language abilities; and no psychomotor abnormalities, despite reports of poor mood and restricted affect" (Tr. 32).   In addressing Plaintiff's ability to adapt and manage herself, the ALJ also concluded that Plaintiff has moderate limitations (Tr. 32).  To support this conclusion, the ALJ noted that Plaintiff could make independent medical decisions, supervise her minor child, complete housework, pay bills, and drive (Tr. 33).  He further cited to mental status examinations showing no psychosis, delusions, intent to harm, that providers adjusted medications, and the lack of extensive psychiatric care.  In addressing these functional limitations, the ALJ also referred to areas that supported limitation, like Plaintiff's difficulty maintaining concentration due to her pain and situational stress, that she reported poor moods, and that she had stress due to her life situation (Tr. 32-33).  To account for these moderate limitations, the ALJ limited the RFC to sedentary work with additional conditions including a low stress job with only occasional changes in the work setting and not a fast-paced job but without additional breaks and absences (Tr. 34; 40).   In making the RFC assessment, the

ALJ did not find persuasive the opinions of two agency doctors, Dr. Nancy Ceasar and Dr. Richard Tipton, because they did not address Plaintiff's mental impairments.

Plaintiff states that her mental health treatment from August 2020 to May 2021 showed moods that were "not good", uncontrolled anxiety and depression, restricted affect, and poor coping skills.  She further states that her ability to talk to her mental health providers does not demonstrate an ability to concentrate and persist at a full-time job and that there was no evidence to contradict her testimony that she required additional breaks during a workday.

Relying on Noerper v. Saul, 964 F.3d 738 (8th Cir. 2000), Plaintiff argues that the ALJ should have supported his RFC conclusion with medical opinions.  In Noerper, the Eighth Circuit found that the ALJ did not fully develop the record because there was no evidence to support the conclusion that the plaintiff could stand or walk for 6 hours in an 8-hour workday.  964 F.3d at 746-747.  In doing so, the Court reiterated the duty of the ALJ to develop the record when there is no evidence regarding functional limitations or where there is a conflict in the record.  Id. at 747.

Unlike Noerper, there is evidence to support the ALJ's conclusion.  Dr. Chakkamparambil's examinations of Plaintiff during the Spring of 2021 showed normal concentration and thought process, as did the evaluation of Dr. Tanya Quinn in December, 2020 (Tr. 957).  Plaintiff also indicated that she was able to perform activities of daily living, that she could make medical judgments and understand their significance, and that she has average intellectual functioning.  She was also able to care for her needs, the needs of her child, and pets. See Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (finding that a plaintiff's ability to "perform[] personal tasks, homework, and errands" ran counter to testimony that she is unable to work).  Certainly, Plaintiff is correct that brief encounters with medical professionals where she appears able to pay attention, standing alone, would not inform the ALJ

of whether she could maintain the concentration, persistence, and pace to work a full-time job. However, in this case, Plaintiff herself indicated that she could concentrate, follow directions, and finish what she starts (Tr. 310).

Plaintiff briefly and summarily states that the ALJ failed to support his findings as to her physical RFC by failing to acquire additional medical opinions. The Court disagrees. As noted above, the ALJ found the agency doctors unpersuasive because they did not consider all the medical evidence submitted after their opinions. He further found that the recent medical evidence resulted in restrictions in excess of what those doctors suggested. Thus, the ALJ considered medical records that revealed more advanced degenerative changes in her spine and knee, and recent records that showed right knee instability and a mild limp. The ALJ then took these new medical findings and added limitations to the RFC suggested by the agency doctors. Thus, notwithstanding the lack of medical opinion, the ALJ considered the medical evidence in formulating Plaintiff's RFC.

In particular, the ALJ found that Plaintiff's back and knee conditions were her primary allegations. He noted that she had longstanding knee pain (Tr. 35) that resulted in right knee arthroscopy in June 2019. Thereafter, the ALJ outlined Plaintiff's treatment: he indicated that there were some normal test result and some abnormal results; that her doctors mostly recommended conservative treatment; that Plaintiff reported some improvement although she still reported pain; and that she generally had a normal gait/coordination, mild loss of strength, and degenerative changes (Tr. 35-36). See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (stating that the ALJ properly considered conservative medical treatment in evaluating plaintiff's claims); Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 at *9 (S.S.A. Oct. 25, 2017) (stating that "if the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). As to Plaintiff's back condition, the ALJ indicated that imaging and testing did not explain her symptoms, and she had normal strength and range of motion. He further noted that her treatment providers questioned the source of her symptoms, the consistency of those symptoms with testing, and her own expectations of pain management – leading to a conclusion that her testimony regarding limitations is inconsistent with medical findings. Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (lack of objective medical evidence to support subjective complaints may be considered by an ALJ). After detailing the mixed bag of Plaintiff's back and knee condition, the ALJ concluded that the limitations set forth in the RFC accounted for any limitations. As such, contrary to Plaintiff's argument, there is substantial evidence supporting the ALJ's RFC assessment.

Finally, Plaintiff argues that the ALJ failed to support his conclusion that Plaintiff did not require additional breaks or absences. Plaintiff testified that, because of her back and knee condition and after physical activity, she needs to lay down for an hour or two (Tr. 70). She also testified that, if she had to alternate between sitting and standing for 45 minutes, she would have to take a break and lay down for 25 minutes (Tr. 71). As to these additional breaks and potential absences, the ALJ found that there was "no persuasive evidence" supporting such limitations (Tr. 40). "If an ALJ explicitly discredits the claimant's testimony and give good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). In this case, while the ALJ did not specifically tie his conclusion to a specific part of the record, his conclusion is supported throughout the opinion. As noted above, the ALJ

did not find that Plaintiff had trouble concentrating based on the medical records and her own assessment of her ability as stated in her function report.  As such, Plaintiff's argument that her mental condition requires additional breaks and absences is unavailing.  Also, the ALJ discounted Plaintiff's statements of disabling pain and limitation related to her back and knee conditions, which were the explanation in her hearing testimony as to why she needed to take breaks and lie down, based on the medical records.  Finally, the ALJ took into account her statements, wherein she indicates that her need to take breaks is related to the extent of her physical activity, by limiting her RFC to sedentary work with additional postural and exertional limitations.  Certainly, there is evidence to support Plaintiff's conclusion that she is disabled; however, this does not lead to conclusion that the Commissioner's decision should be reversed.  Austin v. Kijakazi, 52 F.4th 723, 728 (8th Cir. 2022).

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of August, 2023.